IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

```
Tahera AHRARY,                    )
                                  )   2:11-cv-02992-GEB-EFB
          Plaintiff,              )
                                  )
     v.                           )   ORDER*
                                  )
SUSAN CURDA, Officer in Charge,   )
Sacramento Office, U.S.           )
Citizenship and Immigration       )
Services; ALEJANDRO N. MAYORKAS,  )
Director, Bureau of Citizenship   )
and Immigration Services, U.S.    )
Dept. of Homeland Security;       )
JANET NAPOLITANO, U.S. Secretary  )
of Homeland Security; ERIC H.     )
HOLDER, JR., U.S. Attorney        )
General; ROBERT S. MUELLER, III,  )
Director of the Federal Bureau    )
of Investigation,                 )
                                  )
          Defendants.             )
_____ )
```

Defendants move for summary judgment on Plaintiff's claim for mandamus relief compelling Defendants to adjudicate her I-485 application to adjust status to permanent residency, arguing "the delay of processing such a complex adjustment case involving terrorism is, as a matter of law, not unreasonable." (Defs.' Mot. 3:16-19.) Specifically, Defendants argue they "have yet to reach final adjudication because of the series of legislative and policy changes that have affected

---

\* This matter is deemed suitable for decision without oral argument. E.D. Cal. R. 230(g).

1

[Plaintiff's] admissibility." Id. 6:4-5. Plaintiff opposes the motion.

## I. LEGAL STANDARD

When the defendant is the moving party and is seeking summary judgment on one or more of a plaintiff's claims,

> [the defendant] has both the initial burden of production and the ultimate burden of persuasion on [the motion]. In order to carry its burden of production, the [defendant] must either produce evidence negating an essential element of the [plaintiff's claim] or show that the [plaintiff] does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. In order to carry its ultimate burden of persuasion on the motion, the [defendant] must persuade the court that there is no genuine issue of material fact.

Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000) (citations omitted). Defendants' motion is based on negating an essential element of Plaintiff's claim for mandamus relief, specifically, that the delay in processing her application is unreasonable. Since Defendants do not carry their initial burden of production, however, the Court will not reach the ultimate burden of persuasion.

## II. UNCONTROVERTED FACTS

Local Rule 260(b) requires:

> Any party opposing a motion for summary judgment or summary adjudication [must] reproduce the itemized facts in the [moving party's] Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial.

If the nonmovant does not "specifically . . . [controvert duly supported] facts identified in the [movant's] statement of undisputed

facts," the nonmovant "is deemed to have admitted the validity of the facts contained in the [movant's] statement." Beard v. Banks, 548 U.S. 521, 527 (2006).

Plaintiff does not specifically controvert the facts in Defendants statement of undisputed facts; therefore, the following facts are uncontroverted for the purposes of Defendants' motion. Plaintiff "was granted asylum on January 13, 2000[; and a] year later, [she] applied for asylum-based adjustment of status pursuant to 8 U.S.C. § 1159(b)." (Defs.' Statement of Undisputed Facts ("SUF") ¶ 1.) "On December 22, 2010, [Plaintiff] filed a second adjustment of status application based on her marriage to a United States citizen." Id. ¶ 2.

U.S. Citizenship and Immigration Services ("USCIS") sent Plaintiff a letter dated February 16, 2011, stating as follows:

> Your case is on hold because you appear to be inadmissible under [§] 212(a)(3)(B) of the [Immigration and Naturalization Act ("INA")], and USCIS currently has no authority not to apply the inadmissibility ground(s) to which you appear to be subject. Rather than denying your application based on inadmissibility, we are holding adjudication in abeyance while the Department of Homeland Security considers additional exercises of the Secretary of Homeland Security's discretionary exemption authority. Such an exercise of the exemption authority might allow us to approve your case.

(Compl. Ex. C.) Plaintiff's "application stated that beginning in 1978, she assisted the Mujadin by distributing pamphlets and giving financial support." (Defs.' SUF ¶ 5.) Defendants state "USCIS determined that the Mujahidin meets the definition of a Tier III undesignated terrorist organization under 8 U.S.C. § 1182(a)(3)(B)(vi)(III)." Id. ¶ 6. Further, Defendants state "[i]f required to complete adjudication of [Plaintiff's] applications today, USCIS would likely deny the case under the terrorism-related inadmissibility grounds at 8 U.S.C." Id. ¶ 7.

## III. DISCUSSION

Plaintiff seeks relief under both the Mandamus and Venue Act ("MVA") and the Administrative Procedure Act ("APA") "to compel the Defendants to promptly adjudicate the I-485 Application to Adjust Status to Permanent Residency[.]" (Compl. ¶ 1.) "[W]hen APA § 706(1) and the mandamus statute are cited as bases to have a court order government employees to perform ministerial duties, the claim should be analyzed under APA standards, not under mandamus standards." Chevron, U.S.A. Prod. Co. v. O'Leary, 958 F. Supp. 1485, 1493 (E.D. Cal. 1997) (citing Independence Mining Co., Inc. v. Babbitt, 105 F.3d 502, 507 n.6 (9th Cir. 1997)).

"The APA provides that a court may compel 'agency action unlawfully withheld or unreasonably delayed.'" Independence Mining Co., Inc., 105 F.3d at 507 (quoting 5 U.S.C. § 706(1)). "Relief under the APA is limited to instances where an agency is alleged to have failed to take a discrete agency action that it is required to take." Saini v. U.S. Citizenship & Immigration Servs., 553 F. Supp. 2d 1170, 1175 (E.D. Cal. 2008) (internal quotation marks and emphasis omitted). "With respect to required ministerial action, however, the APA requires administrative agencies, at 5 U.S.C. § 555(b), to act upon such matters within a reasonable time." Id. at 1175-76 (internal quotation marks omitted).

Defendants argue Plaintiff's "application is the object of the agency's prosecutorial discretion and internal guidelines." (Defs.' Mot. 6:3-4.) However, as argued by Plaintiff, Defendants have a nondiscretionary duty to adjudicate I-485 immigration status adjustment applications:

> the duty to act on an application, as opposed to what action will be taken, is not discretionary on

4

> the part of the USCIS. Therefore the salient point, in considering the availability here of relief under the APA, is whether or not there has been an unreasonable delay entitling Plaintiff to judicial intervention. The absence of a specified deadline within which action must be taken does not change the nature of USCIS' obligation from one that is ministerial to a matter within the agency's discretion.

Saini, 553 F. Supp. 2d at 1176; see also Independence Mining Co., Inc., 105 F.3d at 507 n.6 (internal citations omitted) ("[A]t some level, the government has a general, non-discretionary duty to process the applications in the first instance. . . . In other words, even if the acts were discretionary, the Secretary cannot simply refuse to exercise his discretion."); Mugomoke v. Curda, Civ. No. 2:10-CV-02166, 2012 WL 113800, at *5 (E.D. Cal. Jan. 13, 2012) ("Under either the default rule of § 555(b) or a non-discretionary duty imposed by 8 C.F.R. § 245.2(a)(5)(I) and 8 C.F.R. § 103.2(b)(18), the USCIS has a duty to decide I-485 applications.").

"What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case." Saini, 553 F. Supp. 2d at 1176. "To evaluate whether relief under the APA is appropriate, the multi-factor test set out in Telecommunications Research & Action v. FCC, 750 F.2d 70, 79-80 (D.C. Cir. 1984) ('TRAC'), is used." Chevron, U.S.A. Prod. Co. v. O'Leary, 958 F. Supp. 1485, 1493 (E.D. Cal. 1997). The test comprises the following six factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason[;] (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason[;] (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake[;] (4) the court should consider the effect

5

> of expediting delayed action on agency activities of a higher or competing priority,[;] (5) the court should also take into account the nature and extent of the interests prejudiced by delay[;] and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

Telecomm. Research & Action, 750 F.2d at 79-80 (internal quotation marks and citations omitted).

Defendants argue "[a]n analysis of the *TRAC* factors shows that the length of delay in this case is, as a matter of law, not unreasonable. [Plaintiff's] application is pending potential consideration for an exemption, which could ultimately take various forms depending on whether future exemptions focus on individuals, groups, conduct, or some combination thereof." (Defs.' Mot. 14:1-4.) Further, Defendants contend "[a]lthough [Plaintiff] has not yet benefitted from the process, exemptions affecting over 14,000 aliens have issued, and there is thus ongoing potential for her to benefit. As such, the Court should find that the delay is not unreasonable as a matter of law and grant summary judgment for Defendants." Id. 8:28-9:2.

Plaintiff rejoins that "[a]n analysis of the . . . TRAC factors show that no 'rule of reason' exists for holding [Plaintiff's] applications on an indefinite hold." (Pl.'s Opp'n 6:10-11.) Further, Plaintiff contends she "does not enjoy any benefit from the government's inaction nor has she received satisfaction for the government service she twice paid for. Rather, the delay has caused her both financial and emotional hardship." Id. 6:11-13.

The second and sixth factors are not relevant to the analysis in this case. "The second factor can be dispensed with readily, as there is no congressional timetable for I-485 adjudications. The agency must adjudicate [Plaintiff's] application in a reasonable amount of time."

6

Mugomoke v. Curda, Civ. No. 2:10-CV-02166, 2012 WL 113800, at *7 (E.D. Cal. Jan. 13, 2012). Concerning the sixth factor, Plaintiff "does not allege any impropriety[, and] thus there is no factual dispute regarding the application of [this] factor." Id. at *8.

Concerning the first factor, Defendants argue "the length of time thus far and the adjudicatory hold is governed by a rule of reason." (Defs.' Mot. 10:10-11.) Specifically, Defendants argue as follows:

> [Plaintiff's] application is on hold because Congress enacted the [Consolidated Appropriations Act ("CAA")] in 2008. On March 26, 2008, in response to changes the CAA made to the Secretary's discretionary exemption authority, USCIS issued a memorandum directing its adjudicators to place on hold certain adjustment cases that could potentially benefit from a future exercise by the Secretary of her exemption authority as recently expanded under the CAA. The current hold placed on adjudication of [Plaintiff's] application results directly from the CAA and USCIS's CAA-based policy—and it inures to her benefit—and is thus governed by a rule of reason as the first *TRAC* factor requires.

Id. 9:21-10:2. Plaintiff rejoins, arguing "it [does not] constitute a rule of reason to keep the application on hold indefinitely in the event that the government crafts an exemption to a law sometime in the future." (Pl.'s Opp'n 3:10-12.)

"[F]or defendants to hold the application indefinitely in case they might, at some unspecified point in the future, consider an exemption does not constitute a 'rule of reason' that allows this court to find the delay reasonable." Mugomoke, 2012 WL 113800, at *7; see also SF Chapter of A. Philip Randolph Inst. v. U.S. Envtl. Prot. Agency, No. C 07-04936, 2008 WL 859985, at *4 (N.D. Cal. Mar. 28, 2008) (quoting In re Cal. Power Exchange Corp., 245 F.3d 1110, 1125 (9th Cir. 2001)) ("Cases in which courts have afforded relief pursuant to § 706(1) 'have

7

involved delays of years, not months.'"); Saini v. U.S. Citizenship & Immigration Servs., 553 F. Supp. 2d 1170, 1176 (E.D. Cal. 2008) (finding a delay of six years to be unreasonable). Further, "Defendants do not explain how these concerns would be undermined by expediting an I-485 application. While the government does cite a number of examples of exemptions granted since 2006, these prior exemptions provide no indication as to when [Plaintiff] might be granted an exemption, if at all." Mugomoke, 2012 WL 113800, at *7. Therefore, since Defendants have not shown this delay is governed by a rule of reason, this factor does not weigh in favor of granting summary judgment.

Defendants argue the third and fifth factors weigh in favor of granting summary judgment since "USCIS's interest in national security and the issuance of potential exemptions outweighs [Plaintiff's] interest in the immediate (indeed, premature) adjudication of her adjustment application." (Defs.' Mot. 12:15-17.) Further, Defendants argue "[Plaintiff] actually inures a *benefit* from the current adjudication hold as the agency assesses whether an exemption may apply in her case, rather than face the denial that would otherwise result from her material support of a Tier III terrorist organization." Id. 11:28-12:2. Plaintiff rejoins that "[a]s a result of the delay in the processing of Plaintiff's applications for permanent residence, Plaintiff has lost her SSI (limited Non-Citizen) benefits in October 2011 because she has not become eligible to apply for U.S. Citizenship." (Pl.'s Opp'n 4:15-17.) Further, Plaintiff argues "[w]hile not the ideal outcome, Plaintiff may prefer taking affirmative action to press a decision on her applications rather than to wait helplessly on the whim of the Defendants." Id. 5:15-17.

The Court has already found the issuance of potential

exemptions to not be a rule of reason, and "the mere invocation of national security [by Defendants] is not enough to render agency delay reasonable per se." Singh v. Still, 470 F. Supp. 2d 1064, 1069 (N.D. Cal. 2007). Further, "[t]he court presumes [Plaintiff] knows the potential consequences should [her] application be denied. The fact [that she] wishes to have the application adjudicated now also supports an inference that the harm of delay is not remote or insignificant." Mugomoke, 2012 WL 113800, at *8. It is also recognized that a "delay in [processing immigration status applications] is less tolerable given that human health and welfare are at stake." Singh, 470 F. Supp. 2d at 1069.

Concerning the fourth factor, Defendants argue the uncontroverted facts show it should weigh in favor of granting summary judgment since "[Plaintiff's] insistence upon immediate adjudication of her application directly challenges the agency's process for exercises of discretionary exemption authority." (Defs.' Mot. 12:26-27.) Plaintiff rejoins that "[w]ithout providing a definitive timetable for a review of whether the Plaintiff qualifies for an exemption, Defendants[] are hard-pressed to articulate a cogent argument as to how a court order for mandamus would affect competing government priorities." (Pl.'s Opp'n 5:20-23.)

"The court has determined that the agency is lawfully required to adjudicate [Plaintiff's] application . . . . If the only effect of expediting the application is the loss of an authority that the court has determined is *ultra vires*, this factor does not militate in [Defendants'] favor." Mugomoke, 2012 WL 113800, at *8.

"The record before the [C]ourt does not support a finding that the factors articulated in the TRAC case weigh in [Defendants'] favor."

9

Id. at *9. Therefore, Defendants have not shown that the delay is not unreasonable, and have not met their initial burden of production.

### IV. CONCLUSION

For the stated reasons, Defendants' motion for summary judgment is DENIED.

Dated: May 8, 2012

_____
GARLAND E. BURRELL, JR.
United States District Judge