IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TAHERA AHRARY,                          )
                                        )       2:11-cv-2992-GEB-EFB
                 Plaintiff,             )
                                        )
         v.                             )       ORDER GRANTING PLAINTIFF'S
                                        )       MOTION FOR SUMMARY JUDGMENT
SUSAN CURDA, Officer in Charge,         )
Sacramento Office, U.S.                 )
Citizenship and Immigration             )
Services; ALEJANDRO N. MAYORKAS,        )
Director, Bureau of Citizenship         )
and Immigration Services, U.S.          )
Dept. of Homeland Security;             )
JANET NAPOLITANO, U.S. Secretary        )
of Homeland Security; ERIC H.           )
HOLDER, JR., U.S. Attorney              )
General; ROBERT S. MUELLER, III,        )
Director of the Federal Bureau          )
of Investigation,                       )
                                        )
                 Defendants.            )
_____ )

        Plaintiff moves for summary judgment on her claim for mandamus
relief,  in  which  she  seeks an order compelling Defendants to
adjudicate "either . . . of her two (2) pending [I-485] Applications to
Adjust Permanent Resident Status."  Plaintiff argues her motion should
be  granted  because  "Defendants  have  unreasonably  delayed  the
adjudication of [her] [A]pplication[s] . . . ."  (Pl.'s Mot. for Summ. J.
("Pl.'s Mot.") 1:11-13.)  Defendants  oppose  Plaintiff's  motion  as
follows: "Defendants respectfully rest upon the arguments set forth in
their March 20, 2012 Motion for Summary Judgment, arguing that the delay

associated with adjudication of [Plaintiff's] Form I-485 Application for Adjustment of Status . . . is not unreasonable." (Defs.' Resp. to Pl.'s Mot. ("Defs.' Resp.") 1:25-27.)[1]

## I. LEGAL STANDARD

A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case." Thrifty Oil Co. v. Bank of Am. Nat. Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

"'Where, as here, the *moving party* bears the burden of proof at trial, [Plaintiff] must come forward with evidence which would entitle [her] to a directed verdict if the evidence went uncontroverted at trial.'" Houghton v. South, 965 F.2d 1535, 1536 (9th Cir. 1992) (emphasis in original) (quoting Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1264-65 (5th Cir. 1991)). If [Plaintiff] satisfies [her] initial burden, "[Defendants] must set forth, by affidavit or as otherwise provided in [Federal] Rule [of Civil Procedure] 56, specific facts showing that there is a genuine issue for trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

---

[1]   Although Plaintiff requests relief in her summary judgment motion on "either . . . of her two (2) pending [I-485] Applications[,]" the summary judgment record does not contain evidence concerning the alleged 2010 Application, and both parties focus their arguments on the January 2001 Application. Therefore, the Court does not reach the issue of whether Defendants' delay in adjudicating the alleged 2010 Application is unreasonable.

1  1987) (citation and internal quotation marks omitted).

2      The evidence must be viewed "in the light most favorable to
3  [Defendants]," and "all reasonable inferences" that can be drawn from
4  the evidence must be drawn "in [their] favor . . . ." Nunez v. Duncan,
5  591 F.3d 1217, 1222-23 (9th Cir. 2010).

6                     **II. UNCONTROVERTED FACTS**

7      Plaintiff is a "native and citizen of Afghanistan who was
8  admitted to the United States on August 14, 1999, on a J-1 non-immigrant
9  visa." (Decl. of Julia Wilcox filed in Supp. of Defs.' Mot. for Summ. J.
10  ("Wilcox Decl.") ¶ 3, ECF No. 11-2.) "Plaintiff was granted asylum by
11  the . . . Immigration and Naturalization Service (["INS"]) on January
12  13, 2000. Id. After one year in the United States in asylum status, an
13  alien may apply for adjustment of status to that of a permanent resident
14  . . . by filing a Form I-485 [application]. . . ." Id. at ¶ 4. Plaintiff
15  applied for asylum-based adjustment of status on January 30, 2001. Id.
16  That Application remains pending. Id. at ¶ 30.

17      Background and security checks are not responsible for the
18  delay in adjudicating Plaintiff's Application; the FBI has completed
19  Plaintiff's name and background checks. Id. at ¶¶ 8-11. "Plaintiff's
20  [A]pplication for adjustment of status remains pending because in the
21  years since she was granted asylum, legislation has been passed that
22  affects the adjudication of her [A]pplication for adjustments of
23  status[,]" specifically including "the USA PATRIOT Act . . . ; the REAL
24  ID Act . . . ; and the Consolidated Appropriations Act of 2008 (CAA)[.]"
25  Id. at ¶ 12.

26      Plaintiff's asylum claim included information that she was an
27  active supporter of the Mujahidin in the Afghanistan insurgency against
28  the Soviet occupation and interim government. Id. at ¶ 13. Plaintiff's

asylum claim indicates that, "beginning in April 1978, she helped the Mujahidin by distributing pamphlets, and by giving financial support to the organization." Id. The Mujahidin is currently designated as a Tier III terrorist organization under 8 U.S.C. 1182(a)(3)(B)(vi)(III). Id. Defendants contend Plaintiff's involvement with the Mujahidin renders her inadmissible for a change in status. Id. at 14.

Under the Immigration & Nationality Act ("INA"), "the Secretary of Homeland Security, in consultation with the Secretary of State and the Attorney General, and the Secretary of State, in consultation with the Secretary of Homeland Security and the Attorney General, have the discretionary authority to exempt certain terrorist-related inadmissibility grounds." Id. at 15. "In December 2007, the CAA amended the Secretary of Homeland Security's authority to exempt certain terrorist-related inadmissibility grounds." Id. at ¶ 18. "Specifically, the CAA expanded the discretionary authority of the Secretary of Homeland Security and the Secretary of State to exempt terrorist-related inadmissibility grounds as they relate to individual aliens, and to exempt certain . . . Tier III terrorist organizations . . . ." Id.

The procedure for exercising the Secretary of Homeland Security's discretionary exemption authority is "intentionally deliberative." Id. at ¶ 26.  "Various factors, including national security, humanitarian, and foreign policy concerns, must be weighed carefully before a decision is made." Id.

On March 26, 2008, Defendant United States Citizenship and Immigration Services ("USCIS") issued a memorandum concerning the adjudication of cases involving terrorist-related grounds of inadmissibility. Id. at ¶ 27. "[T]he memorandum instructed that adjudicators should withhold adjudication of cases that could benefit

from the Secretary's expanded discretionary authority . . . . " Id. "The adjudication of Plaintiff's [A]pplication is currently being withheld in accordance with [that] agency policy." Id. ¶ 30.

Defendants indicate that "[i]f USCIS were ordered to complete the adjudication of Plaintiff's [A]pplication for adjustment of status, the case would likely be denied without prejudice to allow plaintiff to re-file." Id. Defendants have also indicated that they "intend[] to adjudicate Plaintiff's [A]pplication . . . at such time as an exercise of the discretionary exemption authority that would apply to Plaintiff becomes available. . . ." Id. at ¶ 31.

On August 23, 2012, Defendants advised the Court that "the Secretary of the Department of Homeland Security signed a new exercise of her exemption authority . . . relating to the terrorism-related grounds of inadmissibility." (Defs.' Notice of Publication of New Exemption, ECF No. 23.) Defendants filed the Declaration of Francis J. Doyle, a Department of Homeland Security employee, in connection with the August 23rd Notice. Ms. Doyle declares that "USCIS has not yet determined whether individuals affiliated with the [Mujahidin], such as the Plaintiff, will be eligible for exemption consideration under this [new] exercise of this exemption authority." (Doyle Decl. ¶3, ECF No. 23-2.) Ms. Doyle further avers:

> If it is determined that the [Mujahidin] group the Plaintiff was affiliated with is eligible for consideration under the new exercise of the exemption authority, Plaintiff's [A]pplication would be removed from hold and USCIS would proceed with adjudication forthwith. If the [Mujahidin] group . . . is not eligible for consideration under this new authority, then either the adjudication hold would continue on Plaintiff's [A]pplication until a new exemption is created that would benefit Plaintiff, or the [A]pplication would be denied.

Id. ¶ 5.

**III. DISCUSSION**

Plaintiff seeks relief under both the Mandamus and Venue Act and the Administrative Procedure Act ("APA") "to compel the Defendants to promptly adjudicate [her] I-485 Application to Adjust Status to Permanent Residency[.]" (Compl. ¶ 1.) "[W]hen APA § 706(1) and the mandamus statute are cited as bases to have a court order government employees to perform ministerial duties, the claim should be analyzed under APA standards, not under mandamus standards." Chevron, U.S.A. Prod. Co. v. O'Leary, 958 F. Supp. 1485, 1493 (E.D. Cal. 1997) (citing Independence Mining Co., Inc. v. Babbitt, 105 F.3d 502, 507 n.6 (9th Cir. 1997)).

"The APA provides that a court may compel 'agency action unlawfully withheld or unreasonably delayed.'" Independence Mining Co., Inc., 105 F.3d at 507 (quoting 5 U.S.C. § 706(1)). "Relief under the APA is limited to instances where an agency is alleged to have failed to take a discrete agency action that it is required to take." Saini v. U.S. Citizenship & Immigration Servs., 553 F. Supp. 2d 1170, 1175 (E.D. Cal. 2008) (internal quotation marks and emphasis omitted). "With respect to required ministerial action, however, the APA requires administrative agencies . . . to act upon such matters within a reasonable time." Id. at 1175-76 (citation and internal quotation marks omitted).

"The failure to act on a Form [I-485] application falls under the purview of the APA." Qureshi v. Napolitano, No. C-11-05814-YGR, 2012 WL 2503828, at *3 (N.D. Cal. June 28, 2012).

> [T]he duty to act on an application, as opposed to what action will be taken, is not discretionary on the part of the USCIS. Therefore the salient point, in considering the availability here of relief under the APA, is whether or not there has been an unreasonable delay entitling Plaintiff to judicial

1    intervention. The absence of a specified deadline
     within which action must be taken does not change
2    the nature of USCIS' obligation from one that is
     ministerial to a matter within the agency's
3    discretion.

4  Saini, 553 F. Supp. 2d at 1176; see also Independence Mining Co., Inc.,

5  105 F.3d at 507 n.6 (internal citations omitted) ("[A]t some level, the

6  government has a general, non-discretionary duty to process the

7  applications in the first instance. . . . In other words, even if the

8  acts were discretionary, the Secretary cannot simply refuse to exercise

9  his discretion."). Therefore, the issue to be decided is whether

10 Defendants' delay in processing Plaintiff's 2001 I-485 Application is

11 unreasonable.

12       "Unreasonable delay in the resolution of immigration

13 applications depends on the particular facts of a case." Qureshi, 2012

14 WL 2503828, at * 4. "To evaluate whether relief under the APA is

15 appropriate, the multi-factor test set out in Telecommunications

16 Research & Action v. FCC, 750 F.2d 70, 79-80 (D.C. Cir. 1984) ('TRAC'),

17 is used." Chevron, U.S.A. Prod. Co. v. O'Leary, 958 F. Supp. 1485, 1493

18 (E.D. Cal. 1997). These factors are:

19       (1) the time agencies take to make decisions must
         be governed by a rule of reason[;] (2) where
20       Congress has provided a timetable or other
         indication of the speed with which it expects the
21       agency to proceed in the enabling statute, that
         statutory scheme may supply content for this rule
22       of reason[;] (3) delays that might be reasonable in
         the sphere of economic regulation are less
23       tolerable when human health and welfare are at
         stake[;] (4) the court should consider the effect
24       of expediting delayed action on agency activities
         of a higher or competing priority,[;] (5) the court
25       should also take into account the nature and extent
         of the interests prejudiced by delay[;] and (6) the
26       court need not find any impropriety lurking behind
         agency lassitude in order to hold that agency
27       action is unreasonably delayed.

28 Telecomm. Research & Action, 750 F.2d at 79-80 (internal quotation marks

and citations omitted).

A.   **First Factor - Rule of Reason**

Concerning the first factor, Plaintiff argues "no rule of reason can exist to allow [Defendants] to keep [her I-485 A]pplication on hold indefinitely in the event that the government crafts an exemption . . . sometime in the future[;] Defendant[s] must either approve [her A]pplication or deny it so that Plaintiff can seek other forms of redress and or otherwise get on with her life." (Pl.'s Mot. 4:11-14.)

Defendants rejoin, "[t]he time . . . USCIS is currently taking to review [Plaintiff's] Application is governed by a rule of reason." (Defs.' Mot. for Summ. J. ("Defs.' Mot.") 9:19-20.) Defendants argue that "[t]he current hold placed on . . . [Plaintiff's A]pplication results directly from the CAA and USCIS's CAA-based policy – and it inures to her benefit . . . ." Id. at 9:25-10:1.

"In evaluating the 'rule of reason' factor for holds on Form I-485 applications due to terrorist-related inadmissibility findings, courts focus, in part, on the length of delay." Qureshi, 2012 WL 2503828, at *4. "Four years or less have been found to be reasonable. By contrast, six years [or] more have been found to be unreasonable." Id. (internal citations omitted). However, "length of delay alone is not dispositive; the reasonableness determination is a fact-specific inquiry." Mugomoke v. Curda, Civ. No. 2:10-CV-02166, 2012 WL 113800, at *4 (E.D. Cal. Jan. 13, 2012)(citation omitted). "Thus, courts have 'look[ed] to the source of the delay-e.g., the complexity of the investigation as well as the extent to which the defendant[s] participated in delaying the proceeding.'" Qureshi, 2012 WL 2503828, at *4 (quoting Singh, 470 F. Supp. 2d at 1068).

1        "Here, the parties do not disagree over the 'source' of the

2   delay." Id. at *5. Defendants placed Plaintiff's Application on hold

3   pursuant to USCIS's policy, which "instruct[ed] that any cases which

4   might benefit from the Secretary's discretionary authority under the CAA

5   to create exemptions should be placed on hold with respect to

6   adjudication." Id.   Plaintiff has not contributed to the delay.

7   Nevertheless, Defendants contend that eleven years is not an

8   unreasonable delay.

9           The Court recognizes that the exemption
    process itself requires careful deliberation, the
10   coordination of numerous agencies, and that the
    process is, by nature, time-consuming. Defendants'
11   motives in implementing USCIS policies and in
    placing Plaintiff's Application on hold are further
12   not being questioned. Here, however, . . .
    Defendants' failure to provide any indication of
13   when Plaintiff can anticipate adjudication of [her]
    Application beyond the current [eleven] years is
14   not reasonable.

15   Id.

16        "[F]or defendants to hold the [A]pplication indefinitely in

17   case [Plaintiff] might, at some unspecified point in the future,

18   [benefit from] an exemption does not constitute a 'rule of reason' that

19   allows this court to find the delay reasonable." Mugomoke, 2012 WL

20   113800, at *7; see also Saini, 553 F. Supp. 2d at 1176 (E.D. Cal. 2008)

21   (finding a delay of six years to be unreasonable). "The record is silent

22   as to how the reviews for a discretionary exemption are being conducted,

23   how long a typical review has taken, how many applications are waiting

24   to be considered for a discretionary exemption, how many applications

25   will be considered before [Plaintiff's] or how many Tier III

26   organizations have not been exempted after being considered for an

27   exemption." Tewolde v. Wiles, No. C11-1077JLR, 2012 WL 750542, at *7

28   (W.D. Wash. Mar. 7, 2012).

1      Further, although the Secretary of the Department of Homeland
2  Security signed a new exercise of her exemption authority on August 10,
3  2012, Defendants have not determined whether Plaintiff will benefit from
4  this new exercise of exemption authority, and Defendants have not
5  provided any evidence concerning when such a determination will be made.

6      For the stated reasons, this factor weighs in favor of
7  granting summary judgment.

8  **B.   Second Factor - Statutory Schedule**

9      "[T]here is no congressional timetable for I-485
10  adjudications. The agency must adjudicate [Plaintiff's A]pplication in
11  a reasonable amount of time." Muqomoke, 2012 WL 113800, at *7.
12  Therefore, "the second factor does not weigh strongly in favor of either
13  party." Qureshi, 2012 WL 2503828, at *6.

14  **C.   Third & Fifth Factors - Effect on Human Health & Welfare and**
15  **Prejudice**

16      Plaintiff argues, *inter alia*, the third and fifth factors
17  weigh in favor of granting summary judgment since "she has . . .
18  suffered mental and emotional pain because of the delay and uncertainty
19  of her future status in the United States . . . ." (Pl.'s Mot. 4:24-
20  5:1.)

21      Defendants counter, "[t]he negative impact on [Plaintiff] is
22  balanced against Defendants' interest in complying fully with the
23  Congressional mandates of the CAA and the resulting USCIS policy[,]" and
24  "[Plaintiff] actually inures a *benefit* from the current adjudication
25  hold as the agency assesses whether an exemption may apply in her case,
26  rather than face the denial that would otherwise result from her
27  material support of a Tier III terrorist organization." (Defs.' Mot.
28  11:22-12:2.) Defendants further argue, "USCIS's interest in national

security and the issuance of potential exemptions outweighs [Plaintiff's] interest in the immediate . . . adjudication of her adjustment [A]pplication." Id. at 12:15-17.

"[C]ourts have recognized that human health and welfare are implicated when I-485 applications are not timely adjudicated." Tewolde, 2012 WL 750542, at *7 (citing Al-Rifahe v. Mayorkas, 776 F. Supp. 2d 927, 937 (D. Minn. Mar. 7, 2011)). Further, "the fact that [Plaintiff] wants [Defendants] to adjudicate [her A]pplication now, despite [Defendants'] warnings that [they] likely will deny [her A]pplication, supports an inference that the harm of the delay is not remote or insignificant." Id. (citing Muqomoke, 2012 WL 113800, at *8). Moreover, "a generalized concern over national security does not provide sufficient justification to hold [Plaintiff's] Application indefinitely. . . . Defendants have not identified any national security concern specific to Plaintiff [her]self." Qureshi, 2012 WL 2503828, at *6.

For the stated reasons, the third and fifth factors weigh in favor of granting summary judgment.

**D.   Fourth Factor - Effect of Expediting Delayed Action**

Plaintiff argues Defendants cannot "articulate a cogent argument as to how a court order [requiring them to adjudicate her I-485 Application] would affect competing government priorities" since they have not "provid[ed] a definitive timetable or a legally binding pledge for review of whether the Plaintiff qualifies for an exemption[.]" (Pl.'s Mot. 5:4-7.)

Defendants counter, "[Plaintiff's] insistence upon immediate adjudication of her [A]pplication directly challenges the agency's process for exercises of discretionary exemption authority." (Defs.'

Mot. 12:26-27.)

Defendants' argument is not persuasive. "The Court is not directing the USCIS how to adjudicate, but merely to adjudicate. Plaintiff does not by this action seek a favorable decision—[she] seeks a decision, positive or negative." Qureshi, 2012 WL 2503828, at *7. Further, "[t]he fact that an exemption in Plaintiff's case may be premature is not dispositive[,] nor does it intrude on the Secretary's discretion. The USCIS still has a duty to act." Id. Therefore, this factor weighs in favor of granting summary judgment.

## E.   Sixth Factor - Bad Faith

Plaintiff "does not allege any impropriety[, and] thus there is no factual dispute regarding the application of [this] factor." Mugomoke, 2012 WL 113800, at *9. However, "a court need not find that an agency acted in bad faith to conclude unreasonable delay." Qureshi, 2012 WL 2503828, at *7.

"Viewing these factors in their totality, the Court concludes that the [eleven]-year delay on Plaintiff's [2001 I-485] Application is unreasonable." Qureshi, 2012 WL 2503828, at *7.

> While Congress did not mandate a deadline for a decision on Plaintiff's Application, Defendants cannot hold the Application indefinitely. Even if Plaintiff could [benefit from the August 10, 2012 exercise of exemption authority or could benefit from another] exemption in the future, it is also possible [s]he will never receive one. Defendants have provided no evidence regarding the likelihood of [Plaintiff benefitting from an exemption] or how rendering a decision would affect or challenge USCIS policies or the discretionary exemption process. While the hold policy may potentially benefit applicants, here, greater benefit inures to Plaintiff by adjudication. . . . In this case, the TRAC factors weigh in Plaintiff's favor, and as such, [s]he is entitled to summary judgment.

Id.

**IV. CONCLUSION**

For the stated reasons, Plaintiff's motion for summary judgment on her APA claim to adjudicate her 2001 Form I-485 Application to adjust status to permanent residency is GRANTED.

Defendants shall adjudicate Plaintiff's 2001 Form I-485 Application to adjust status to permanent residency within 60 days from the date on which this order is filed.

Dated:  October 2, 2012

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge

13