IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

```
TAHERA AHRARY,                      )
                                    )   2:11-cv-02992-GEB-EFB
              Plaintiff,            )
                                    )
         v.                         )   ORDER DENYING ATTORNEY'S FEES
                                    )
SUSAN CURDA, Officer in Charge,     )
Sacramento Office, U.S.             )
Citizenship and Immigration         )
Services; ALEJANDRO N. MAYORKAS,    )
Director, Bureau of Citizenship     )
and Immigration Services, U.S.      )
Dept. of Homeland Security;         )
JANET NAPOLITANO, U.S. Secretary    )
of Homeland Security; ERIC H.       )
HOLDER, JR., U.S. Attorney          )
General; ROBERT S. MUELLER, III,    )
Director of the Federal Bureau      )
of Investigation,                   )
                                    )
              Defendants.           )
_____    )
```

Plaintiff moves for $6,987.50 in attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), prescribed in 28 U.S.C. § 2412(d). (Pl.'s Mot. for Award of Attorney's Fees ("Pl.'s Mot.") ECF No. 30, ¶¶ 13, 19.) Plaintiff argues she is entitled to these fees and costs since an Order was filed on October 3, 2012, in which Plaintiff was granted partial summary judgment and Defendants were directed to adjudicate Plaintiff's Form I-485 Application to Adjust to Permanent

1

Resident Status. (Order Granting Pl.'s Mot. for Summ. J. ("Order"), ECF No. 28.) Defendants oppose Plaintiff's motion "on the grounds that both the delay in adjudicating the adjustment of status application and the government's litigating position were substantially justified." (Defs.' Opp'n to Pl.'s Mot. ("Defs.' Opp'n"), ECF No. 36, 1:27–29.)

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed a Form I-485 Application to Adjust to Permanent Resident Status in January 2011 based on her status as an asylee. (Compl. ¶ 11.) Plaintiff's application was received by U.S. Citizenship and Immigration Services ("USCIS"). (Id. ¶ 11; id., Ex. A.) Over ten years later, on July 20, 2011, Plaintiff "submitted a letter to U.S. Secretary of Homeland Security Janet Napolitano to inquire about her adjustment application." (Id. ¶ 15; id., Ex. D.) Plaintiff eventually received a response stating that USCIS was "holding adjudication in abeyance" and that an "exact date for completion of the DHS review is not known at this time." (Id. ¶ 15; id., Ex. D.) Under the USCIS directive of March 26, 2008,[1] USCIS's policy was to "withhold adjudication of asylee adjustment of status applications where the applicant appears to be inadmissible due to provision of material support to a Tier III terrorist organization" until "such time as an exemption to the terrorism-related ground of inadmissibility ("TRIG") becomes available." (Defs.' Opp'n 3:15–18, 4:20–21.) Plaintiff's adjustment of status application implicated USCIS's hold policy since over thirty years ago Plaintiff supported one of the Mujahideen groups

---

[1] See Memorandum from Jonathan Scharfen, Deputy Dir., U.S. Citizenship & Immigration Servs., Withholding Adjudication and Review of Prior Denials of Certain Categories of Cases Involving Association with, or Provision of Material Support to, Certain Terrorist Organizations or Other Groups (Mar. 26, 2008) (issuing "this USCIS-wide hold directive").
.

2

in Afghanistan, which was then classified as a Tier III terrorist organization under 8 U.S.C. § 1182(a)(3)(B)(vi)(III), and thus subject to the material support to terrorism bar codified in 8 U.S.C. § 1182(a)(3)(B)(iv)(VI)(dd). (Decl. of Julia Doig Wilcox ("Wilcox Decl."), ECF No. 11—2, ¶¶ 13, 14.)

On November 9, 2011, Plaintiff filed the instant lawsuit seeking a declaratory judgment that Defendants' adjudication delay was unreasonable and a writ of mandamus to compel Defendants to adjudicate her decade-old adjustment of status application. (Compl. 11:2—9.) Plaintiff argued that she "suffered significant mental and emotional pain" due to Defendants' delay in adjudicating her Form I-485 application, among other harms. (Id. ¶ 22; see id. ¶¶ 20, 21; id., Ex. H.)

Defendants argued that their delay in adjudicating Plaintiff's application was "reasonable" and "inure[d] to the benefit" of Plaintiff. (Defs.' Opp'n 4:1, 4:12.) When Plaintiff applied for asylum-based adjustment of status, such applications were subject to "an annual numerical limitation of 10,000" applications, generating a significant backlog. (Wilcox Decl. ¶ 6.)[2] Although the annual 10,000 application limit was lifted in May 2005,[3] USCIS did not complete adjudication of the "asylum based adjustment applications that had been affected by the numerical limitation" until 2008. (Id. ¶ 7.) In 2008, Plaintiff's application was placed on hold in accordance with USCIS's agency-wide

---

[2] See 8 U.S.C. § 1159(b) (2004) ("Not more than 10,000 of the refugee admissions authorized . . . in any fiscal year may be made available . . . to adjust to the status of . . . permanent residence the status of any alien granted asylum who [meets certain specified criteria].")

[3] See REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231 (May 11, 2005).

3

hold policy, set forth in the March 26 memorandum. (Id. ¶ 12.) USCIS classified Plaintiff as "inadmissible" to the United States under 8 U.S.C. § 1182(a)(3)(i)(I), since Plaintiff "afford[ed] material support" to an undesignated Tier III terrorist organization and thus "[e]ngage[d] in terrorist activity" under 8 U.S.C. § 1182(a)(3)(B)(iv)(VI)(dd). (Wilcox Decl. ¶ 14.) However, the Congressional Appropriations Act of 2008 ("CAA") granted the Secretary of Homeland Security ("Secretary") expanded discretionary authority to exempt applicants from these terrorism-related inadmissability grounds. See § 1182(d)(3)(B)(i).[4] Interpreting the CAA, USCIS implemented an agency-wide hold policy, directing adjudicators to "place on hold any case in which . . . the alien might benefit from future [TRIG] exemptions issued by the Secretary" under her newly expanded CAA authority. Ayyoubi v. Holder, 712 F.3d 387, 389 (8th Cir. 2013). Plaintiff's application was placed on hold in accordance with this policy. (Wilcox Decl. ¶ 30.)

When Defendants filed their final brief in this case, no existing TRIG exemption benefitted Plaintiff. (Id. ¶ 25.) Therefore, although USCIS had jurisdiction to adjudicate Plaintiff's adjustment of status application under 8 C.F.R. § 245.2(a), USCIS explained that if it "were ordered to complete the adjudication of Plaintiff's application for adjustment of status" at that time, Plaintiff's application "would

---

[4] The CAA amended the Immigration and Nationality Act ("INA") to allow the Secretary "to make a determination to not apply almost all of the terrorism-related [inadmissability] provisions under INA section 212(a)(3)(B)," 8 U.S.C. § 1182(a)(3)(B). Memorandum from Michael L. Aytes, Acting Deputy Dir., U.S. Citizenship & Immigration Servs., Implementation of Section 691 of Division J of the Consolidated Appropriations Act, 2008, and Updated Processing Requirements for Discretionary Exemptions to Terrorist Activity Inadmissibility Grounds (July 28, 2008); see Consolidated Appropriations Act of 2008, Pub. L. No. 110-161, 121 Stat. 2364 (Dec. 26, 2007) (codified as amended at 8 U.S.C. § 1182(d)(3)(B)(i)).

4

likely be denied." (Id. ¶ 30.) Defendants argue that they "reasonably believed [USCIS] had the authority to create the hold policy," that such authority derived from the CAA, and that the policy inured to the benefit of adjustment of status applicants such as Plaintiff. (Defs.' Opp'n 4:20—21.)

After Defendants filed their final brief opposing Plaintiff's summary judgment motion, the Secretary "signed a new exercise of her [TRIG] exemption authority, pursuant to" the authority conferred upon her by the CAA. (Id. 4:3—4.) The new exemption prescribes that the bar on admissibility for any alien who "engages in terrorist activity" by "afford[ing] material support" to a Tier III undesignated terrorist organization "shall not apply with respect to an alien . . . who meets [certain enumerated] specifications." Notice of Determination: Exercise of Authority Under the Immigration and Nationality Act, 77 Fed. Reg. 49821 (Aug. 17, 2012).

After Plaintiff submitted her brief on the new August 2012 TRIG exemption, Defendants were ordered to adjudicate Plaintiff's application within sixty days, based on a finding that the TRAC factors—which govern the issuance of the relief sought, and which are set forth in Telecommunications Research & Action v. FCC, 750 F.2d 70, 79—80 (D.C. Cir. 1984)—weigh in Plaintiff's favor. "On October 15, 2012, USCIS favorably adjudicated [Plaintiff's] application" for adjustment of status. (Pl.'s Mot. ¶ 4.) Defendants argue that they were "ultimately able to approve [Plaintiff's] application" because of the new August 2012 exemption. (Defs.' Opp'n 4:3—6.)[5]

---

[5] Defendants also contend that they could not grant Plaintiff's application for adjustment of status earlier, since no existing exemption benefitted Plaintiff and exercise of the Secretary's exemption
(continued...)

5

## II. LEGAL STANDARD

Under the EAJA, a party litigating against the United States may recover attorney's fees and costs when: "(1) the plaintiff is the prevailing party; (2) the government has not met its burden of showing that its positions were substantially justified or that special circumstances make an award unjust; and (3) the requested attorney's fees and costs are reasonable." Perez-Arellano v. Smith, 279 F.3d 791, 793 (9th Cir. 2002) (citing 28 U.S.C. § 2412(d)(1)(A)). The decision to award such fees and costs under the EAJA is within the sound discretion of the district court. Pierce v. Underwood, 487 U.S. 552, 563 (1988).

## III. DISCUSSION

Defendants argue they were substantially justified both in delaying adjudication of Plaintiff's application for adjustment of status until they could grant Plaintiff's application and in defending this lawsuit in court. (Defs.' Opp'n 1:26–28.) Plaintiff rejoins that "Defendants cannot substantially justify taking eleven years to adjudicate an application." (Pl.'s Reply to Defs.' Opp'n, ECF No. 37, 3:8–9.)

Under the EAJA, the government bears the burden of showing that its actions were "substantially justified," namely, that it "had a reasonable basis [for its actions] both in fact and law." Pierce, 487 U.S. at 565. "It may sustain that burden by showing its position is 'a novel but credible extension or interpretation of the law.'" Petition of Hill, 775 F.2d 1037, 1042 (9th Cir. 1985) (quoting Hoang Ha v.

---

[5](...continued)
authority "generally requires not only a significant investment of resources from [the agencies involved], but also a significant period of time." (Wilcox Decl. ¶ 28.) See generally Singh v. Napolitano, 909 F. Supp. 2d 1164, 1175 (E.D. Cal. 2012) (collecting cases recognizing the same).

6

1 Schweiker, 707 F.2d 1104, 1106 (9th Cir. 1983)). Further, "[t]he fact that the [g]overnment lost its case on the merits does not create a presumption that its position was not substantially justified." Timms v. United States, 742 F.2d 489, 492 (9th Cir. 1984); accord Renee v. Duncan, 686 F.3d 1002, 1017 (9th Cir. 2012).

Here, USCIS's adjudication delay from 2001 until 2008 was substantially justified under § 2412(d)(1)(A). The delay during those years was due to the congressionally authorized 10,000 annual numerical limitation on asylum-based adjustment of status applications and the consequent backlog of such applications. See 8 U.S.C. § 1159(b) (2004). Following enactment of the CAA on December 26, 2007, USCIS authorized and implemented a policy to withhold adjudication of any application that might benefit from the exercise of the Secretary's greatly expanded discretionary authority under the CAA. (Defs.' Opp'n 4:20—24.) Defendants' hold policy was thus "'a novel but credible extension or interpretation'" of the newly enacted CAA. Renee, 686 F.3d at 1017 (quoting Timms, 742 F.2d at 492). Further, creation of the hold policy was reasonable in light of the "substantial discretion in determining matters of policy" afforded to the Secretary by the Immigration and Nationality Act, id., and the "complex" TRIG statutory scheme. See Pottgieser v. Kizer, 906 F.2d 1319, 1324 (9th Cir. 1990) ("If the statutory scheme to be considered is complex . . . then [EAJA] fees may be denied.").

Further, when USCIS took and defended its position, no circuit court had examined the reasonableness of USCIS's hold policy. (Opp'n 5:8—9.) Nor had district courts reached consistent conclusions concerning the reasonableness of the adjudication delays due to USCIS's hold policy. Compare, e.g., Khan v. Scharfen, No. 08-1398 SC, 2009 WL

1  941574, at *9 (N.D. Cal. Apr. 6, 2009) ("conclud[ing] that the delay in
2  adjudication of [p]laintiff's application for adjustment of status [due
3  to USCIS's hold policy] is reasonable"), and Singh, 909 F. Supp. 2d at
4  1177 (same), with Qureshi v. Napolitano, No. C-11-05814-YGR, 2012 WL
5  2503828, at *7 (N.D. Cal. June 28, 2012) (determining that the delay in
6  adjudicating plaintiff's application due to USCIS's hold policy "is
7  unreasonable"), and Mugomoke v. Curda, No. 2:10-CV-02166 KJM DAD, 2012
8  WL 113800, at *9 (E.D. Cal. Jan. 13, 2012) (same). USCIS thus acted
9  "without any guidance from any federal [appellate] court," and without
10 consistent guidance from federal district courts. See Renee, 686 F.3d at
11 1018 (finding government's position substantially justified given "the
12 divergent views of federal judges" and the absence of controlling
13 precedent); Gonzales v. Free Speech Coal., 408 F.3d 613, 621 (9th Cir.
14 2005) (concluding government's position was substantially justified
15 because "'reasonable minds' could and *did* differ").

16         In the absence of clear legal authority, Defendants adopted a
17 consistent position to which they adhered throughout, and which did not
18 require Plaintiff to undertake complex or lengthy remedial litigation.
19 See Spencer v. N.L.R.B., 712 F.2d 539, 559—61 (D.C. Cir. 1983) (listing
20 these criteria as indicative of substantially justified government
21 positions); see also Le v. Astrue, 529 F.3d 1200, 1201 (9th Cir. 2008)
22 (holding government's position was "nonfrivolous" and thus substantially
23 justified in light of the statutory scheme). Therefore, although
24 Defendants' actions in delaying adjudication of Plaintiff's adjustment
25 of status application for eleven years were unreasonable under the TRAC
26 factors, Defendants' actions in authorizing, implementing, and defending
27 the USCIS-wide hold policy were substantially justified under 28 U.S.C.
28 § 2412(d)(1)(A).

**III. CONCLUSION**

Accordingly, Plaintiff's request for attorney's fees and costs is denied.

Dated: July 18, 2013

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge